S01A0256. PASS v. THE STATE.
(543 SE2d 719)

HUNSTEIN, Justice.

Newton Clarence Pass was convicted of the felony murder of Julius French and possession of a firearm during the commission of a crime.[1] His motion for new trial was denied and he appeals, challeng-

[1] The crimes occurred on July 4, 1988. Pass was indicted on December 9, 1999 in Gordon County on charges of murder, felony murder, aggravated assault and possession of a firearm during the commission of a crime. He was found guilty of felony murder and the possession charge on January 12, 2000 and was sentenced that same day to life imprisonment and to a concurrent five year sentence on the possession charge. His motion for new trial filed February 8, 2000 and amended on March 16, 2000, was denied on October 2, 2000. A

ing the ruling by the trial court that no prejudicial evidence had been improperly injected into the jury's deliberation. Finding no reversible error, we affirm.

1. The jury was authorized to find that long-standing animosity existed between appellant and the victim. On July 4, 1988, the day of the murder, the victim appeared at appellant's residence seeking drugs. Appellant walked the victim down the hallway of the house and killed him by shooting him once in the face and once in the chest. Appellant disposed of the body by stuffing it into a sleeping bag and dumping it in a cemetery. Appellant claimed that he shot and killed the victim in self-defense after the victim backed him down the hallway with a shotgun. Franklin Moore testified on behalf of the defense that the victim had informed him that he was going to appellant's residence to kill appellant if appellant "didn't have his money or jewelry." On the other hand, prosecution witnesses testified that appellant admitted to shooting and killing the victim after the victim asked for more drugs before paying for drugs he had already procured from appellant. Appellant's girlfriend testified that after the shooting she observed appellant covered in blood splatters, that she helped move the victim's car and wipe the fingerprints from it and assisted in disposing of the murder weapon, and that appellant showed her how he had committed the crime.

This evidence was sufficient to enable a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error appellant challenges the trial court's failure to grant a new trial given the evidence of juror misconduct which he claims contributed to the guilty verdict. In support of the motion, appellant's trial counsel testified that a week after the trial finished he contacted a member of the jury who was a personal acquaintance in order to obtain feedback about his courtroom performance and that during the conversation he learned that the juror had observed defense witness Moore talking to members of appellant's family and exchanging something between them. Appellate counsel's investigator testified to a similar conversation wherein the juror confirmed he saw defense witness Moore speaking with appellant's family, but denied that he witnessed any type of exchange. None of the jurors testified at the hearing; however, they all submitted affidavits that the verdict was based solely on the evidence presented in the courtroom and not on any extra-judicial event. In

---

notice of appeal was filed on October 6, 2000. The appeal was docketed on October 31, 2000 and submitted for decision on the briefs.

his affidavit, the juror who observed Moore speaking with appellant's family stated that he never saw or suspected an exchange of money, nor did he announce to other jurors what he had observed.

We do not accept that any exchange of information between these jurors, if it occurred, can be characterized as juror misconduct which rises to a level of constitutional significance as it did in *Watkins v. State*, 237 Ga. 678, 683-685 (229 SE2d 465) (1976) (juror misconduct occurred when jury members intentionally gathered highly prejudicial, extra-judicial evidence and communicated findings to other jury members). Unlike *Watkins v. State*, there was no intentional gathering of extra-judicial evidence by members of the jury and no showing that what one juror witnessed was communicated to the other jurors. Moreover, the circumstances of this case do not warrant an exception to the rule that jurors are not permitted to impeach their own verdict. *Williams v. State*, 252 Ga. 7 (1) (310 SE2d 528) (1984) (rule prohibiting jurors from impeaching their verdict is deeply rooted in Georgia law); OCGA § 17-9-41. See *Oliver v. State*, 265 Ga. 653 (3) (461 SE2d 222) (1995); *Joachim v. State*, 263 Ga. 816 (3) (440 SE2d 15) (1994). Absent a showing that any action by a juror in appellant's case was presumptively so prejudicial as to infect the verdict and require that appellant be given a new trial, we conclude that the trial court did not err in refusing to grant the motion for new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 2, 2001.

*Cook & Connelly, Bobby Lee Cook, Todd M. Johnson*, for appellant.

*David N. Vaughan, Jr., District Attorney pro tempore, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.